UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 1:21-cr-643 (CKK) |
| v. : | |
| : | |
| KAREGAN BOSTIC, : | |
| : | |
| Defendant : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Karegan Bostic to 30 days home detention as part of a 36-month term of probation, 60 hours of community service, and $500 in restitution.

**I.    Introduction**

Defendant Karegan Bostic (K. Bostic), a 22-year-old hyperbaric chamber operator participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.8 million dollars' in losses.

Defendant K. Bostic pleaded guilty to one count of violating 40 U.S.C. § 5104(e )2(G). As explained herein, a sentence of 30 days home detention as part of a 36-month term of probation is appropriate in this case because K. Bostic: (1) entered an area of the Capitol, the Senate Wing, where it was clear that entry was not allowed and that rioters had forced entry; and (2)  has shown no remorse for her actions and instead told the FBI that she thought the rioters had been "set up", blaming her conduct on others.

The Court must also consider that K. Bostic's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who tried to prevent a breach of the Capitol Building, and disrupt the proceedings. Here, the facts and circumstances of K. Bostic's crime support a sentence of 30 days home detention, followed by 3 years of probation, 60 hours of community service, and $500 in restitution in this case.

II.     **Factual and Procedural Background**

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 21 (Statement of Offense), at 1-7.

*K. Bostic's Role in the January 6, 2021 Attack on the Capitol*

On January 6, 2021, K. Bostic traveled with her father Willard Thomas Bostic, Jr. (W. Bostic), and her sister Meghan Rutledge (Rutledge) (collectively, "the Defendants") from Chesapeake, Virginia to Washington, D.C., via automobile. ECF 75, Statement of Offense, ¶ 8. The Defendants attended the "SAVE AMERICA RALLY" at the ellipse where former President Trump spoke.
*Id*. at ¶ 8.

After attending the rally, the Defendants walked with a massive crowd of people who waved flags and chanted. The Defendants are captured in a video from open-sources marching to the Capitol. *See* https://web.archive.org/web/submit?url=https://video.parler.com/y4/K5/y4K5OwDPuupA.mp4



*Image 1 depicts the Defendants W. Bostic (circled in red), K. Bostic (circled in yellow), and Rutledge (circled in blue) marching to the Capitol Building in a video located at*
https://web.archive.org/web/submit?url=https://video.parler.com/y4/K5/y4K5OwDPuupA.mp4

By 2:00 PM, rioters had forced their way through the barricades on Capitol grounds, and the police were forced to retreat while the crowd advanced to the exterior façade of the building. *Id*. at ¶ 5. The Defendants advanced to the Upper West Terrace of the Capitol and stood on the stairs of the Capitol with other rioters who had overrun this restricted area. K. Bostic admitted as part of her guilty plea that the Defendants "were part of the mob that gathered on the West Front at the Inaugural Stage and Upper West Terrace." *Id*. at ¶ 10 She also admitted that while there, the Defendants "also accessed the scaffolding at the Inaugural stage." *Id*.



*Image 2 depicts the Defendants W. Bostic (circled in red), K. Bostic (circled in yellow), and Rutledge (circled in blue) on the West Front of the Capitol.*

The defendants surely had a clear view of other rioters fighting the police as they climbed the scaffolding of the Inaugural Stage, which is adjacent to the Northwest stairs where police were overrun by rioters.

**Image 3**          **Image 4**          **Image 5**



*Image 3 is a picture Rutledge took of W. Bostic (circled in red) on the Inaugural Stage scaffolding at 2:24 PM.  Image 4 is a picture she took of the same area at 2:25 PM. capturing a view of the West Front shortly after rioters overran the police there, and Image 5 is a photo of rioters advancing up the Northwest stairs after they overran the police there.*

Besides the view from the scaffolding of other rioters, there were other obvious signs not to enter the Capitol Building. Rioters who had climbed on the building were visibly standing on ledges of the buildings directly above the Defendants. Rutledge used her phone to photograph the chaotic scene on the Upper West Terrace, with one image capturing the view K. Bostic had of the Capitol Building of rioters climbing on and standing on ledges of the building.



*Image 6 is a photo taken at approximately 2:35 PM by Rutledge of rioters (circled in green) on the Capitol Building and K. Bostic in a light blue coat, ponytail, and hat circled in yellow) and W. Bostic in front of her (circled in red) with a view of other rioters.*



*Image 7 is a photo taken at approximately 2:35 PM by Rutledge of rioters (circled in green) on the Capitol Building.*

In fact, on the day of the riot, Rutledge affirmed in a text message to a friend that she and her sister K. Bostic (and presumably W. Bostic, since the Defendants were all together throughout their time in and around the Capitol) witnessed flash bangs, rioters who "broke windows to get inside of the capital [sic] building", and the use of tear gas by police against rioters, including the sisters themselves. Specifically, Rutledge recounted the following, including details of a conversation she had with K. Bostic:

> I'm so irritated bc **I said to my sister** when we began approaching the capitol building and everyone started climbing over the wall that they were going to bastardize this on the news ... and sure enough they did ... Everyone was very kind and helpful to each other especially when it came to helping out the elderly who were tear gassed and flash banged amongst the crowds. The camaraderie was amazing however the media is only showing tiny clips of what they want you to see . When walking back to the car we could hear everyone's conversations around us saying the same thing about how there was absolutely no violence other than when **they broke the windows to get inside of the capital building** but no violence amongst eachother [sic] and also everyone was looking out for the police who were just doing their jobs.

*******

I didn't break anything **and I was tear gassed repeatedly** so yes the news especially today was just really deceiving ... the only thing I witnessed that I personally just didn't feel right about was **breaking down doors and busting through windows of the Capitol Building** but even then no one intended on hurting anyone.

*Instant message Rutledge sent on January 6, 2021 at 8:57 PM.* (emphasis added)

Notwithstanding those warnings of violence, at approximately 3:12 p.m., the Defendants breached the U.S. Capitol Building through the Senate Wing door, an area with broken windows that rioters were climbing through, and a blaring alarm. K. Bostic admitted that she "entered the Capitol building while sympathizing with the crowd in support of President Trump on January 6th." ECF 90, Presentence Investigation Report, ¶ 31.



*Image 8 depicts the Defendants W. Bostic (circled in red), K. Bostic (circled in yellow), and Rutledge (circled in blue) breaching the Capitol Building through the Senate Wing door at approximately 3:12 PM.*

Once inside of the Capitol Building, The Defendants took several photos of themselves in the Senate Wing.

7

**Image 9**            **Image 10**



*Images 9 and 10 depict the Defendants W. Bostic (circled in red), K. Bostic (circled in yellow), and Rutledge (circled in blue) in the Senate Wing with other rioters.*

After taking photos, the trio left the Capitol Building through the Senate Wing door at approximately 3:16 PM. The group found their friend (who apparently did not go into the Capitol building), went to their car, and drove back to their homes in Virginia. ECF 90, Presentence Investigation Report, ¶ 22.

On January 6, 2021, Rutledge commented on the defendants' time at the Capitol. Notably, she celebrated that the family made it inside of the Capitol. stating, "[a]fter miles and miles of walking and climbing and climbing some more we made it inside the capitol building. What an experience for the books".



*Image 11 is a post that Rutledge made to Facebook commenting on the defendants' breach of the Capitol.*

*K. Bostic's FBI Interview*

On April 26, 2022, the FBI contacted K. Bostic at her place of employment. After being advised that she did not have to speak and could stop the interview at any time, K. Bostic agreed to interview with the FBI. She reviewed photos and admitted that these were photos of her inside the Capitol Building with a mask and outside of the building without a mask. K. Bostic said that she did not witness any violence while inside of the Capitol Building. She said that when she heard about the violence after they left the Capitol, she said they felt as they were "set-up". Notably, K. Bostic did not express any remorse regarding breaching the Capitol.

*The Charges and Plea Agreement*

On May 24, 2022, the United States charged K. Bostic by criminal complaint with Entering or Remaining in any Restricted Building or Grounds in violation of 18 U.S.C. §§ 1752(a)(1), Disorderly and Disruptive Conduct in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(2), Disorderly Conduct in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(D), and Parading Demonstrating, or Picketing in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(G). On May 25, 2022, the FBI arrested K. Bostic on the above charges. K. Bostic refused to interview with the FBI at this point.

On June 6, 2022, the United States charged K. Bostic by a 4-count Information with violating 18 U.S.C. 1752 and 40 U.S.C. 5104. On October 31, 2022, pursuant to a plea agreement, K. Bostic pleaded guilty to Count 4 of the Information, charging her with a violation of 40 U.S.C. § 5104(e)(2)(G). By plea agreement, K. Bostic agreed to pay $500 in restitution to the Architect of the Capitol.

**III.   Statutory Penalties**

K. Bostic now faces a sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, K. Bostic faces up to six months of imprisonment and a fine of up to $5,000. K. Bostic must also pay restitution under the terms of her plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

**IV.   Sentencing Factors Under 18 U.S.C. § 3553(a)**

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. Some of those factors include: the

nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6). In this case, as described below, the Section 3553(a) factors weigh in favor of a sentence of 30 days home detention as part of a 36-month term of probation, 60 hours of community service, and $500 in restitution.

### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40 (TNM), 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing K. Bostic's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like K. Bostic, the absence of violent or destructive acts is not a mitigating factor. Had K. Bostic engaged in such conduct, she would have faced additional criminal charges.

A particularly aggravating feature of K. Bostic's offense is that she witnessed the violence, chaos, and people rioting at the Capitol and still entered the Capitol Building. She also has shown no remorse for her actions, instead calling the riot a "setup".

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of home detention.

11

### B. The History and Characteristics of K. Bostic

As set forth in the PSR, K. Bostic resides with her parents, which include her father and codefendant, W. Bostic, in Chesapeake, Virginia. ECF 90, ¶ 45. She has no criminal history and is employed as a hyperbaric chamber operator in-training and plans to pursue college courses majoring in psychology. ECF 90, ¶ ¶ 45,53, 55.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be

deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President.

The gravity of these offenses demands deterrence. It is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

As shown in the images above, K. Bostic witnessed the chaos and violence that took place at the Capitol. That did not deter her from breaching the Capitol Building. She apparently was also pepper-sprayed and heard flash bangs as noted by her sister Rutledge. Still, K. Bostic, decided to enter the Capitol Building even though that area was riot-torn with broken glass, rioters climbing through the window, and alarms blaring. Months later, the defendant blamed her actions on being "set up", thus showing no remorse for her actions. A sentence of home-detention as part of a term of probation is warranted to deter similar conduct in the future.

E. **The Need to Avoid Unwarranted Sentencing Disparities**

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[1] This

---

[1] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL

Court must sentence K. Bostic based on her own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: her participation in the January 6 riot.

K. Bostic has pleaded guilty to Count 4 of the Superseding Information, charging her with Parading Demonstrating, or Picketing in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A. § 3553(6), do apply, however.

**Non-Guidelines Cases**

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Section 3553(a)(6) does not limit the sentencing court's broad discretion under 18 U.S.C. § 3553(a) "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). Although unwarranted disparities may "result when the court relies on things like alienage, race, and sex to differentiate sentence terms," a sentencing disparity between defendants whose differences arise from "legitimate considerations" such as a "difference[] in types of charges" is not unwarranted. *United States v. Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020).

---

BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

"Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case." *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006). "[A] defendant cannot rely upon § 3553(a)(6) to seek a reduced sentence designed to lessen disparity between co-defendants' sentences." Consequently, Section 3553(a)(6) neither prohibits nor requires a sentencing court "to consider sentencing disparity among codefendants." *Id.* Plainly, if Section 3553(a)(6) is not intended to establish sentencing uniformity among codefendants, it cannot require uniformity among all Capitol siege defendants charged with petty offenses, as they share fewer similarities in their offense conduct than codefendants do. *See United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Tr. at 48-49 ("With regard to the need to avoid sentence disparity, I find that this is a factor, although I have found in the past and I find here that the crimes that occurred on January 6 are so unusual and unprecedented that it is very difficult to find a proper basis for disparity.") (statement of Judge Chutkan)

Cases involving convictions only for Class B misdemeanors (petty offenses) are not subject to the Sentencing Guidelines, so the Section 3553(a) factors take on greater prominence in those cases. Sentencing judges and parties have tended to rely on other Capitol siege petty offense cases as the closest "comparators" when assessing unwarranted disparity. But nothing in Section 3553(a)(6) requires a court to mechanically conform a sentence to those imposed in previous cases, even those involving similar criminal conduct and defendant's records. After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a)

15

factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095. It follows that a sentencing court in a Capitol siege petty offense case is not constrained by sentences previously imposed in other such cases. *See United States v. Stotts*, D.D.C. 21-cr-272 (TJK), Nov. 9, 2021 Sent. Hrg. Tr. at 33-34 ("I certainly have studied closely, to say the least, the sentencings that have been handed out by my colleagues. And as your attorney has pointed out, you know, maybe, perhaps not surprisingly, judges have taken different approaches to folks that are roughly in your shoes.") (statement of Judge Kelly).

Additionally, logic dictates that whether a sentence creates a disparity that is unwarranted is largely a function of the degree of the disparity. Differences in sentences measured in a few months are less likely to cause an unwarranted disparity than differences measured in years. For that reason, a permissible sentence imposed for a petty offense is unlikely to cause an unwarranted disparity given the narrow range of permissible sentences. The statutory range of for a petty offense is zero to six months. Given that narrow range, a sentence of 30 days home detention as part of a 36-month term of probation will not create an unwarranted disparity with a sentence of probation only, at the bottom. *See United States v. Servisto*, D.D.C. 21-cr-320 (ABJ), Dec. 15, 2021 Sent. Hrg. Tr. at 23-24 ("The government is trying to ensure that the sentences reflect where the defendant falls on the spectrum of individuals arrested in connection with this offense. And that's largely been accomplished already by offering a misdemeanor plea, which reduces your exposure substantially.") (statement of Judge Berman Jackson); *United States v. Dresch*, D.D.C. 21-cr-71

(ABJ), Aug. 4, 2021 Sent. Hrg. Tr. at 34 ("Ensuring that the sentence fairly reflects where this individual defendant falls on the spectrum of individuals arrested in connection with the offense has largely been accomplished by the offer of the misdemeanor plea because it reduces his exposure substantially and appropriately.") (statement of Judge Berman Jackson); *United States v. Peterson*, D.D.C. 21-cr-309, Sent. Hrg. Tr. at 26 (statement of Judge Berman Jackson) (similar).

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, two case are comparable. In *United States v. Joshua Bustle and Jessica Bustle*, 1:21-cr-238 (TFH), Joshua Bustle (Bustle) drove from Virginia (like K. Bostic) with his wife and they reached the Capitol Building through a second floor door to the Rotunda. ECF 38, Government's Sentencing Memorandum, at 4.  That door had been breached by rioters about 20 minutes before the Bustles entered, but there were clear signs of damage in the area that the defendants entered as the doors' windows were smashed. The couple remained inside the Capitol for approximately 20 minutes and left.  *Id*. at 2, 5.  So too, K. Bostic breached the Capitol Building through the Senate Wing, where windows were broken, and alarms blared. She also saw rioters hanging on ledges of the building before she entered and was tear gassed with her sister outside of the building. Bustle, like K. Bostic, had no social media related to the riot. *Id*. at 5. Bustle was sentenced to 30 days' home detention as part of a term of 36 months' probation.

In *United States* v. *Fox*, 1:21-cr-435 (BAH), Fox breached the Capitol by climbing through one of the Senate Wing windows, the area where K. Bostic entered. Fox remained in the Capitol for less than two minutes, while K. Bostic remained inside for four minutes. Both Fox and K. Bostic, however, did not leave until they took photos while in the Senate Wing. Fox also admitted that he witnessed rioters breaking a window at the Senate Wing, and he posted that image to Facebook. ECF 33 (Government's Sentencing Memorandum) at 6. Fox also failed to express

17

remorse for his actions, declaring that in terms of breaching the Capitol, "I'd do it again." *Id*. at 10.  While K. Bostic has not said that she would repeat her actions, she downplays her conduct, and shifts blame to those who she believes "set [her] up".  Fox was sentenced to 2 months' home detention as part of a term of 36 months' probation, and a $2,500 fine.  K. Bostic's actions are comparable to Fox's and warrant a similar sentence.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

### V.     Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence K. Bostic to 30 days home detention as part of a 36-month term of probation, 60 hours of community service, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on her liberty as a consequence of her behavior, while recognizing her acceptance of responsibility for her crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     s/ Anthony L. Franks
Assistant United States Attorney
Bar No. 50217M O
601 D Street, N.W
Washington, DC 20530
anthony.franks@usdoj.gov
(314) 539-3995

## CERTIFICATE OF SERVICE

On this 24th day of February 2023, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

s/ Anthony L. Franks
Assistant United States Attorney
Bar No. 50217M O
601 D Street, N.W
Washington, DC 20530
anthony.franks@usdoj.gov
(314) 539-3995